Matthew Sutton, OSB No. 924797
Attorney at Law
205 Crater Lake Avenue
Medford, OR 97504
Direct: 541-772-8050
ms@matthewsuttonlaw.com

Michelle Freed, OSB No. #042880
Eblen Freed PC
1040 NE 44th Ave Ste 4
Portland OR  97213
Direct: 503 548-6332
michelle@eblenfreed.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| **NATHANIEL BOREN,**<br><br>Plaintiff,<br><br>vs<br><br>**SKY LAKES MEDICAL CENTER, INC., an Oregon Non-Profit Corporation, and CARTER-JONES COLLECTION SERVICE, INC., an Oregon Corporation,**<br><br>Defendants | Case No. 1:23-cv-01684<br><br>**COMPLAINT—Fair Debt Collection Practices Act (15 U.S.C. §1692a, et seq.)**<br><br>**JURY TRIAL DEMANDED** |

1    COMPLAINT

**INTRODUCTION**

1.

This is an action for damages brought by an individual consumer for violations of

the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA") and the

Oregon Unlawful Trade Practices Act ("UTPA") ORS 646.605 et. seq.

**JURISDICTION**

2.

Plaintiff's claim for violations of the FDCPA arises under 15 U.S.C. §1692k(d)

and involves a "federal question" pursuant to 28 U.S.C. § 1331.

3.

Plaintiff's remaining state law claims are subject to the supplemental jurisdiction

of this Court under 28 U.S. Code § 1367.

**PARTIES**

4.

Plaintiff Nathaniel Boren ("Mr. Boren") is a natural person residing in Klamath

County, Oregon.

5.

Defendant Sky Lakes Medical Center, Inc.  ("Sky Lakes") is an Oregon Nonprofit

Corporation with its principal place of business in Klamath County, Oregon.

6.

Defendant Carter-Jones Collection Services, Inc. ("Carter-Jones") is a collection

agency and Oregon Corporation with its principal place of business in Klamath County,

Oregon.  At all times material herein, Carter-Jones has regularly engaged in the collection of consumer debts.

**BACKGROUND**

7.

Since at least 2009 the debts collected by Carter-Jones have predominantly been Sky Lakes debts for unpaid hospital and medical services.  At all times material herein, Carter-Jones acted on its own behalf, but also as the agent of Sky Lakes within the course and scope of its agency. A redacted copy of the 2009 agreement ("Master Agreement") between Defendants for the collection of Sky Lakes debts is attached hereto as Exhibit "1" and incorporated herein.  Under section 5, the Master Agreement expired in 2010 or 2011 and has not been updated.  Although Carter-Jones is responsible for its own actions, Sky Lakes is also responsible for the actions of Carter-Jones described herein.

8.

The law governing healthcare and the collection of medical debts has changed dramatically since 2009, but Sky Lakes and Carter Jones have failed to recognize this. As a non-profit hospital, Sky Lakes is required by state and federal law to comply with various requirements, including but not limited to providing financial assistance to its qualifying patients, conducting financial screening to determine eligibility for financial assistance, and ensuring by written agreement with Carter-Jones and otherwise that reasonable steps are taken to determine this eligibility before accounts are turned over for collection or collection lawsuits are filed on its debts. Such collection lawsuits are

3    COMPLAINT

one form of "extraordinary collection action" ("ECA") that are restricted under federal law.  However, while Sky Lakes has partially complied, it has failed to comply with several of these requirements, including improperly allowing ECA's through thousands of Carter-Jones collection lawsuits against its patients for their medical debts.

9.

On or about June 8, 2020, Mr. Boren received medical treatment at Sky Lakes. At the time, he did not have health insurance and could not afford to pay his bills since he only had a temporary job and had other obligations.  During this time, Sky Lakes had a program with a 25% discount for uninsured patients and other financial assistance. Eligibility for financial assistance is determined by law according to the relation of a patient's income to the federal poverty guidelines.  Mr. Boren's situation was such that he would have benefited by this program.  However, Sky Lakes did not advise patients about the 25% discount unless they called in and did not actively screen their patients for financial assistance.   When Mr. Boren could not pay his hospital bill, Sky Lakes simply sent it to Carter-Jones for collection.

10.

Sending Mr. Boren's hospital bills to collection was in violation of ORS 646A.677 since Sky Lakes 1) failed to conduct a screening to determine whether he qualified for financial assistance; 2) failed to provide him with a copy of its financial assistance policy with the financial assistance application.  In fact, Sky Lakes decided to keep  its financial assistance policy confidential, a copy of which is attached hereto as Exhibit "2" and incorporated herein.

4     COMPLAINT

11.

Nonetheless, on about November 16, 2022, Carter-Jones filed a lawsuit ("the Collection Lawsuit") against Mr. Boren in Klamath County Circuit Court case no. 22SC29959.  A copy is attached hereto as Exhibit "3" and incorporated herein. Court records report that a  copy of the Collection Lawsuit that was served on Mr. Boren on November 21, 2022.  This was a prohibited ECA under Federal law since Sky Lakes had previously failed to enter any agreement with Carter-Jones seeking to ensure that reasonable steps were taken to determine a patient's eligibility for financial assistance before such a lawsuit was filed.

12.

In Oregon, non-profit hospitals and those that collect for them are restricted by ORS 646A.677 as to pre-judgment interest charges to patients.  Patients that qualify for financial assistance cannot be charged pre-judgment interest and those that do not qualify can only be charged at a reduced rate of approximately 2% per annum. However, Defendants ignored these legal requirements that became effective on January 1, 2020.

13.

Sky Lakes was aware that Carter-Jones was charging and collecting 9% statutory interest on their accounts and did nothing to stop them from doing so.  Instead, since January 1, 2020 Sky Lakes continued sending thousands of uninsured patients or patients that could not afford to pay their bills to Carter-Jones for collection.  This included Mr. Boren's account.

5    COMPLAINT

14.

At all times material herein, Carter-Jones was a member of professional organizations such as the Oregon Collectors Association and the ACA International, both of which regularly advise their members of changes in laws affecting the amounts that collection agencies may lawfully collect.  At all times material herein, Carter-Jones was aware of the requirements of ORS 646A.677, including the changes implemented in January of 2020.

15.

Similarly, at all times material herein, Sky Lakes had attorneys and professionals charged with legal compliance and responsibility for awareness of legal requirements for non-profit hospitals in Oregon.    This included but was not limited to its Chief Legal Officer Grant Kennon, a licensed Oregon attorney since 2013, and Mr. Hal Perlman, Director of Patient Financial Services.  At all times material herein, Sky Lakes was also aware of the requirements of ORS 646A.677, including the changes implemented in January of 2020.

16.

Like thousands of other accounts that Carter-Jones had collected for Sky Lakes, the Collection Lawsuit sought pre-judgment interest from Mr. Boren at the full statutory rate of 9% per annum and represented to the Court that it was entitled to this.  However, this was false and  improper not just because it was prohibited by Oregon law.   It was also improper since Sky Lakes decided back in 2016 not to charge interest.  When Sky Lakes Director of Financial Services Hal Perlman was asked about this under oath, he

6      COMPLAINT

testified that Sky Lakes didn't "…want to place that additional financial burden upon the patient."  As such, its Conditions of Services do not state that Sky Lakes patients will be charged interest, nor do their invoices or requests for payment, nor does any other document that Sky Lakes provides to its patients.  Accordingly, no interest was assigned from Sky Lakes to Carter-Jones for collection.  Moreover,  any right to any such interest had been waived by Sky Lakes even before any assignment of the medical bills to Carter Jones.

17.

On or about  December 9, 2022, Carter-Jones obtained a judgment against Mr. Boren for the full amount sued for in the Collection Lawsuit, including interest on his Sky Lakes Medical bills.  A copy of the judgment which totaled $794.18 is attached hereto as Exhibit "4".  This allowed Carter Jones to seek payment from Mr. Boren by threatening to garnish his wages.   After being contacted by Carter-Jones, Mr. Boren began making payments on the Judgment and finally paid it off on or about April 3, 2023.  A copy of the May 16, 2023 Satisfaction of Judgment is attached hereto as Exhibit "5".  His payments to Carter-Jones totaled $887.24 and never should have been collected from Mr. Boren to the forgoing legal violations.

**FIRST CLAIM FOR RELIEF**

**Fair Debt Collection Practices Act**

**(Against Carter-Jones Only)**

18.

Re-alleges paragraphs 1 through 17 incorporated herein.

19.

7    COMPLAINT

At all times material herein, Sky Lakes was a creditor as defined by 15 USC 1692a(4).

20.

At all times material herein, Ms. Boren was a consumer as denied by 15 USC 1692a(3).

21.

At all times material herein, the debts sought to be collected by Carter-Jones were debts as defined by 15 USC 1692a.

22.

At all times material herein, Carter Jones was a debt collector as defined by 15 USC 1692a(6).

23.

Carter-Jones violated the FDCPA by one or more of the following:

(a) seeking the collection of amounts not authorized by law or agreement in violation of 15 USC 1692f(1);

(b)  making false, misleading, or deceptive representations concerning the debt in violation of 15 USC 1692e;

(c) threatening to take action which could not legally be taken in violation of 15 USC 1692e(2)(5); and/or

(d) using unfair or unconscionable means to collect the debts in violation of 15 USC 1692f;

8    COMPLAINT

24.

Carter-Jones's failure to comply with the strict liability provisions of the FDCPA caused Mr. Boren actual damages, including the amounts paid to Carter-Jones described herein, plus interest thereon at 9% per annum from the date of loss, until paid.

25.

. Carter-Jones' actions caused Mr. Boren additional actual damages, including but not limited to noneconomic damages for stress, emotional upset, anxiety, and sleeplessness, all to his noneconomic damage in an amount not exceeding $50,000.

26.

Mr. Boren is also entitled to statutory damages against Carter-Jones under 15 U.S.C. § 1692k(2)(A), in an amount to be determined at trial.

27.

Under 15 U.S.C. § 1692k, Mr. Boren is entitled to judgment determining that Plaintiff violated the FDCPA, awarding his actual damages and statutory damages in amounts to be decided at trial, together with reasonable attorney's fee and costs as determined by the Court.

**SECOND CLAIM FOR RELIEF**

**(UTPA)**

28.

Re-alleges paragraphs 1 through 17 incorporated herein.

9    COMPLAINT

29.

At all times material herein, Sky Lakes and Carter-Jones were each "persons" as defined by ORS 646.605(4) engaged in their "business, vocation or occupation" under ORS 646.608(1).

30.

At all times material herein, Sky Lakes medical, billing and financial services were within the definition of "real estate, goods or services" ("Services") under ORS 646.605(6) of the UTPA.  These services were obtained by Mr. Boren for personal or family purposes. At all said times, the collection and financial services engaged in by Carter-Jones were also Services under the same provision of the UTPA.

31.

At all times material herein, Sky Lakes misrepresented its charges to Mr. Boren by stating them in such a manner which indicated that they would be free from any interest charges whereas its practice was to turn accounts over to collection where its patients would have to pay interest.  Conversely, Carter-Jones misrepresented the charges to Mr. Boren as including increased amounts for interest when any such interest was improper, unlawful, not assigned to Carter Jones, or otherwise waived by Sky Lakes, or unlawful under ORS 646A.477.  By their conduct in this regard, Defendants, respectively, violated one or more provisions of the UTPA as follows:

(a) Representing that Services had approval, characteristics, benefits, quantities or qualities that the Services do not have in violation of ORS 646.608(1)(e); and/or

10      COMPLAINT

(b) Making false or misleading representations concerning the nature of the transaction or obligation incurred in violation of ORS 646.608(1)(k).

32.

At all times material herein, Defendants' violations were willful in that they knew or reasonably should have known that their actions were violations.

33.

As a direct result of the forgoing violations, Mr. Boren has suffered an ascertainable loss in the amount of $887.24 paid to Carter-Jones, which includes the amounts for improper interest, and in the diminution in value of the Sky Lakes services which Mr. Boren did not anticipate or bargain for to include the collection of unlawful amounts and unlawful practices.

34.

Mr. Boren is entitled to recover his economic damages in an amount to be proven at trial, or statutory damages in the amount of $200 for each violation, whichever is greater, plus reasonable attorney fees pursuant to ORS 646.638.

35.

The actions of each Defendant, respectively, are in violation of their societal obligations, and in reckless or willful disregard of the risk of harm to consumers like Mr. Boren.  By pursuing these actions, Sky Lakes and Carter-Jones have each profited at the expense of thousands of Oregon consumers that cannot afford to pay their medical bills.  An award of punitive damages in an amount not exceeding $1 million per Defendant would serve to deter additional wrongdoing.

11    COMPLAINT

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

A.  On its First Claim for Relief against Carter-Jones under the FDCPA,

    1.   Declaring that Sky Lakes' conduct violated the FDCPA and enjoining any further violations;

    2.  Actual and noneconomic damages pursuant to 15 U.S.C. §1692k in an amount to be proven at trial;

    3.  Statutory damages pursuant to 15 U.S.C. §1692k; and

    4.   Costs, disbursements and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k;

B.   On its Second Claim for Relief against both Defendants under the UTPA, judgment against each Defendant, respectively, as follows:

    1.   Declaring that Defendants violated the UTPA;

    2.  Actual damages to be proven at trial, or $200 per each violation, whichever is greater;

    3.  Punitive damages in an amount to be proven at trial not exceeding $1 million dollars per Defendant;

C.   Prejudgment interest from the date of each loss plus post judgment interest on all amounts awarded herein at the maximum rate allowed by law; and

12    COMPLAINT

D.   For such other and further relief as may be just and proper.


DATED this 14th day of November, 2023

/s/  Matthew Sutton
Matthew Sutton, OSB #924797
Attorney at Law
205 Crater Lake Avenue
Medford, OR 97504
ms@matthewsuttonlaw.com
Phone: 541-772-8050

Michelle Freed, OSB No. #042880
Eblen Freed PC
1040 NE 44th Ave Ste 4
Portland OR  97213
michelle@eblenfreed.com
Direct: 503 548-6332

Attorneys for Plaintiff

# AGREEMENT

THIS AGREEMENT is made and entered into as of this 12th day of January, 2009, by and between Sky Lakes Medical Center, Inc., a not-for-profit corporation organized under the laws of the State of Oregon (hereinafter "Sky Lakes"), and Carter-Jones Collections Service, Inc. ("Carter-Jones") a for profit Oregon corporation. In addition, this contract shall include accounts assigned from West Physician Services, Cascade East Family Practice and any physicians under contract with Sky Lakes.

## RECITALS

**1.**    WHEREAS Sky Lakes is tax exempt under the federal tax laws of the United States of America and operates an acute-care, general hospital located at 2865 Daggett Street, Klamath Falls, Oregon; and,

**2.**    WHEREAS Carter-Jones will provide debt collection services to Sky Lakes as requested to assist Sky Lakes in the recovery of monies due on past due accounts receivable;

**3.**    WHEREAS Sky Lakes believes that it can maximize the recovery of monies due on past due accounts by employing a debt collection agency duly registered in the state of Oregon to assume responsibility for collection of said monies;

**4.**    WHEREAS Sky Lakes believes that this Agreement will effectively fix that responsibility  and will, therefore, contribute to the collection of monies due on past due accounts as follows:

      **4.1**    This Agreement will facilitate the provision of debt collection services and will coordinate the inter-relationship between Carter-Jones and Sky Lakes.

      **4.2**    This Agreement will assure the ready and regular availability of Carter-Jones for the purpose of providing debt collection services to Sky Lakes.

**NOW, THEREFORE**, in consideration of the foregoing recitals and the mutual promises and covenants hereinafter contained, the parties agree as follows:

**5.**    **Term of this Agreement.**

      **5.1**  This Agreement is to take effect on January 1st, 2009, and is to continue in force for one (1) year.

      **5.2**  This Agreement may be renewed for one (1) successive one-year term, upon notice by Carter-Jones to Sky Lakes on hundred twenty (120) days prior to January 1st, 2010.

  **5.3** All terms and conditions of the original Agreement as commencing on January 1st, 2009, and continuing in force until December 31st, 2009, shall be in force and effect in any renewal agreement.

**6.**  **Termination of Agreement.**

  **6.1** The obligations of the parties to this Agreement shall terminate upon the occurrence of any of the following:

   **6.1.1** Failure of Carter-Jones to comply with current Oregon statutory law applicable to the collection of debt.

   **6.1.2** Material breach of contract by Sky Lakes at the option of Carter-Jones unless the breach is curable and is cured within twenty (20) days following notice.

   **6.1.3** Material breach of contract by Carter-Jones at the option of Sky Lakes unless the breach is curable and is cured within twenty (20) days following notice.

   **6.1.4** This Agreement may be terminated by Sky Lakes **immediately and without notice** in the event Sky Lakes, in good faith, determines that Carter-Jones is conducting itself in an unprofessional, unethical, or fraudulent manner, which Sky Lakes believes discredits or is detrimental to its reputation, character, and standing of Sky Lakes within the community.

   **6.1.5** This Agreement may be terminated by Sky Lakes immediately and without notice in the event Sky Lakes, in good faith, determines that Carter-Jones is not providing adequate debt collection services, or that Carter-Jones is in violation of or has violated the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), attached as Exhibit A and incorporated herein by reference.

  **6.2** Either party may terminate this Agreement by giving ninety (90) days notice pursuant to **Section 17** of this Agreement.

**7.**  **Effect of Termination:**

  **7.1** Upon termination of this agreement, for any reason, neither party shall have any further obligation hereunder except obligations, promises, or covenants contained herein, which accrue prior to the date of termination, including but not limited to repayment of any outstanding/unforgiven amounts related to relocation expenses or physician practice income losses;

**7.2**    Obligations, promises, or covenants contained herein which are expressly made to extend beyond the term of this agreement.

**8.    Collection Agency Responsibilities.**

**8.1**    During the term of this Agreement, Carter-Jones shall ensure that, when requested by Sky Lakes, it provides debt collection services consistent with the terms of this Agreement and applicable laws and regulations.

**8.2**    Carter-Jones shall be responsible for developing a system whereby Sky Lakes can timely notify Carter-Jones of the assignment to Carter-Jones of a past due account receivable.

**8.2.1**    Carter-Jones shall document any and all collection efforts it undertakes on Sky Lakes' behalf.

**8.3**    Carter-Jones shall comply with the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), including but not limited to the requirements as set forth in **Exhibit A**, attached and incorporated herein by reference.

**8.4**    Carter-Jones agrees to pay principal balance collected on the assigned accounts to Sky Lakes within 30 days of the month of collection.

**9.    Compensation.**





**10.     Limitations of Responsibility.**

    **10.1**     Carter-Jones agrees to indemnify and hold harmless Sky Lakes from and against any and all liability for claims of whatever kind or character arising out of:

        **10.1.1**  Carter-Jones's failure to comply with any statutes, regulations, or ordinances for the provision of debt collection services in the State of Oregon;

        **10.1.2**  Negligence or any other tortous conduct of Carter-Jones and/or Carter-Jones's personnel or agents relating to the provision of debt collection services;

        **10.1.3**  Disputes arising out of any contractual commitments between Carter-Jones and third parties;

    **10.2**     Sky Lakes agrees to indemnify and hold harmless Carter-Jones from and against any and all liability for claims of whatever kind or character arising out of:

        **10.2.1**  Sky Lakes' failure to comply with any statutes, regulations, ordinances or licensing requirements;

        **10.2.2**  Negligence or any other tortuous conduct of Sky Lakes' personnel or agents;

        **10.2.3**  Disputes arising out of any contractual commitments between Sky Lakes and third parties.

**11.     Independent Contractor.**

    **11.1**     The relationship of Carter-Jones to Sky Lakes is that of an independent contractor. Carter-Jones is not an employee, partner, joint venturer, of or with Sky Lakes.

12.   **Assignment:**

    **12.1**   Nothing contained within this Agreement shall be construed to permit the assignment or delegation by Sky Lakes or Carter-Jones of any rights, duties, or obligations hereunder; and such assignment of this Agreement is expressly prohibited, except as delineated in Section 12.2 below.

    **12.2**   Nothing contained in this Agreement shall be construed as to prohibit Sky Lakes from assigning its rights or delegating its duties to a subsidiary or successor corporation.

    **12.3**   Sky Lakes grants Carter-Jones the right to sue upon, satisfy, or compromise accounts, endorse checks for deposit into Sky Lakes trust account or to reassign or transfer accounts to another collection agency.

    **12.4**   Sky Lakes may cancel any account assigned to Carter-Jones at any time unless judgment has been obtained.

13.   **Governing Law.**

    **13.1**   This Agreement is executed in the City of Klamath Falls, County of Klamath Falls, State of Oregon, and shall be construed under the laws of the State of Oregon.  The parties agree that any action relating to this Agreement shall be instituted and prosecuted by the courts of the County of Klamath, State of Oregon; and each party waives the right to change of venue.

14.   **Entirety of the Agreement.**

    **14.1**   This instrument contains the entire agreement between the parties and no statements, writings, promises, or inducements made by either party, or an agent of either party, that are not contained in this written Agreement, shall be valid or binding.  This Agreement may not be enlarged, modified, or altered except in writing, signed by the parties and endorsed on this Agreement.

15.   **Benefit of Agreement.**

    **15.1**   This Agreement shall inure to the benefit of the parties to this Agreement.

16.   **Confidentiality.**

    **16.1**   The parties to this Agreement agree that all terms and conditions of this Agreement shall be kept confidential except as herein specifically required.

**16.2**    The parties shall exercise reasonable efforts to keep the terms and provisions of this Agreement confidential, and also shall exercise reasonable efforts not to disclose any of the terms of Carter-Jones's employment as an independent contractor to other persons except in response to an order of a court, governmental demands or, if necessary, to attorneys, accountants and auditors, who shall be apprised of this agreement concerning confidentiality.

 **16.2.1**  Not withstanding **Sections 16.1 and 16.2,** neither part shall have any liability to the other party if, for any reason beyond the reasonable control of either party, the terms and conditions of this Agreement shall be disclosed or otherwise become known to others.

 **16.2.2**  This obligation shall continue in force after the term of this Agreement, and shall survive any termination of this Agreement.

## 17. Notice.

 **17.1**   All notices that are required or desired to be given by either party shall be in writing and shall be personally delivered to the other party, mailed to the other party by United States certified or registered mail, postage prepaid, or faxed to the other party, addressed as shown below. Any such notice not personally served shall be deemed received 48 hours after faxed or deposited in the mail to the address designated below. A party may change its address for service of notice by providing written notice of the change to the other party.

Carter-Jones:        Carter-Jones Collections Service, Inc.
            1143 Pine St.
            Klamath Falls, OR 97601

Sky Lakes:         Sky Lakes Medical Center, Inc.
            2865 Daggett Avenue
            Klamath Falls, OR 97601

## 18. Severability.

 **18.1**    If a court of competent jurisdiction holds any portion of this Agreement to be void or otherwise unenforceable as written, it is the intention of the parties that (a) the court reform such portion of the Agreement and enforce it to the full extent permitted by law, and (b) the remaining portions of this Agreement shall remain in full force and effect.

## 19.    Counterparts:

**19.1**    This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all such counterparts together shall constitute but one and the same instrument.

IN WITNESS HEREOF, the parties hereto have duly executed this Agreement effective the date first written above.

Sky Lakes Medical Center, Inc.                    Carter-Jones Collections Service, Inc.

By:  _PAUL R STEWART_                    By:  _KENT PEDERSON_
Its: _PRESIDENT/CEO_                    Its: _PRESIDENT_

*This Agreement approved as to legal sufficiency dated this* _12th_ *day of* _January_ , _2009_

BOIVIN, UERLINGS & DiIACONI, P.C.
*Attorneys for Sky Lakes*

*Signed:* _Barbara M. DiIaconi_
Barbara M. DiIaconi



<span style="color:blue">House-wide Manual
Administration Folder</span>

**TITLE**
Financial Assistance Program

**PURPOSE**
To ensure that the Medical Center provides Financial Assistance in a fair, consistent and objective manner.

**POLICY**
The Medical Center provides emergency care services pursuant to the Emergency Medical Treatment and Active Labor Act (EMTALA) regardless of a patient's insurance or financial status. Discounts for emergency services are determined after EMTALA obligations are met.

The Medical Center shall give services free of charge for traditional, non-elective services to patients who meet the financial requirements set by the facility. The Federal Poverty Income Guidelines, published each year, shall be used as the financial measurement tool.

The Medical Center does not discriminate on the basis of race, color, religion, sex, age, handicap, or national origin.

Financial Assistance provided by the Medical Center is intended to aid the resident members of the communities served by the Medical Center: including Klamath County and Lake County in Oregon, as well as Modoc County and Siskiyou County in California. Proof of current residency shall be required along with the application.

Any patient residing outside of this service area that requires emergent/urgent treatment while traveling, visiting or temporarily working within the Medical Center's primary service area may also be considered eligible for Financial Assistance.

Financial Assistance applies only to accounts billed by the Medical Center. Other independent physicians, including anesthesiologists, surgeons, pathologists and other specialists may bill separately. Hospital Financial Assistance would not be applied to those bills. Additionally, Financial Assistance cannot be applied to any ambulance, air flight or other transportation services. The full list of independent providers whose services cannot be covered under the Medical Center Financial Assistance application can requested at any time or can be found in the attached addendum.

Other **Excluded Services** may include:
A.  Services considered non-covered or not medically necessary by the State of Oregon Medicaid program or a patient's private insurance.

*This document is confidential and proprietary to Sky Lakes Medical Center. Unauthorized use or copying without written consent is strictly prohibited. Printed copies are for reference only. Please refer to the Intranet for the most current version.*

Sky Lakes - CP00018

B.  Non-emergent services provided to a patient who chooses to come to the Medical Center out of their insurance plan network.
C.  Patients who have insurance but opt not to use it.
D.  Elective procedures.
E.  Take home prescriptions or supplies issued by the Pharmacy.
F.  Durable Medical Equipment.
G.  Services rendered as a result of patient's own criminal behavior.

**Household Income**
Household income is determined using the Census Bureau definition, which uses the following income when computing federal poverty guidelines:

A.  Income includes earnings, unemployment compensation, worker's compensation, social security, supplemental security income, veterans' payments, survivor benefits, pension or retirement income, interest, dividends, rents, royalties, income from estates, trusts, alimony, and child support.
B.  Benefits such as health insurance, food stamps, educational assistance and housing subsidies are excluded.
C.  Capital gains or losses are also excluded.

These are generally accepted guidelines. Please note that if a patient's financial circumstances, such as other medical bills, future earning capacity, or a major catastrophic event greatly affect a patient's ability to make future payments, there may be additional consideration for Charity Care.

**Change Healthcare**
We contract with a vendor named Change Healthcare to help us identify patients who may qualify for coverage through the following government programs:

A.  Crime Victims Assistance
B.  Emergency Medicaid for Undocumented Aliens
C.  Medicaid for pregnant women and children
D.  Oregon Breast and Cervical Cancer Program
E.  Medicaid
F.  Medicare
G.  Supplemental Security Income (SSI)
H.  Temporary Aid for Needy Families (TANF)
I.  Veterans

Change Healthcare shall work with these individuals through the process of qualifying for coverage until the Medical Center receives reimbursement for the services rendered to these patients.

Patients who have been contacted by Change Healthcare shall complete a full Change Healthcare screening prior to receiving a final approval for hospital Financial Assistance. Patients who have been deemed non-compliant by Change Healthcare may not be considered for Financial Assistance. Likewise, patients who are deemed eligible for Financial Assistance by Change

*This document is confidential and proprietary to Sky Lakes Medical Center. Unauthorized use or copying without written consent is strictly prohibited. Printed copies are for reference only. Please refer to the Intranet for the most current version.*

Sky Lakes - CP00019

Healthcare might be granted Presumptive Approval status and may not be required to submit additional documentation for proof of eligibility.

**PROCEDURE**

A. Applicants for Financial Assistance shall complete a Financial Assistance Packet (FAP), available at all the Medical Center registration areas. Patients shall be asked to provide the following:
   1. Three months of income verification. If a patient states that they or their spouse are unemployed or that they did not file taxes for the previous year, a wage record shall be required.
   2. Federal income tax records for the past two years.
   3. We shall make every effort to determine a patient's ability to pay in terms of income, not assets, however tax returns may be used to identify other assets or future sources of income for patients who make in excess of 200% of the Federal Income Poverty Guidelines. Additional supporting documentation may be requested to make this determination.

B. All applicants shall have either a Social Security Number, a working Tax ID Number (TIN), or a valid Travel Visa to qualify.  Exceptions may be considered when treating life threatening illnesses such as cancer diagnoses or other high acuity services. These determinations are made on a case by case basis.
   1. If married, both spouses shall have a Social Security number or working TIN number and shall provide proof of income.
   2. In the case of a non-working spouse we shall require a work history from the employment office.
   3. Exception shall be if the spouse only has a working TIN number, a wage record cannot be obtained from the employment office. The spouse shall need to be listed on the tax return.

C. Family size shall be determined by the information supplied on the most recent federal income tax return of number of dependents claimed. If a patient's family size has increased since the last tax return was filed, we shall require additional documents (i.e. court decrees, proof of birth, etc.) to validate the change.

D. Financial Counselors are able to partially assist with this process. Additionally, Change Healthcare shall be available to assist patients through this process.

E. For accounts related to Motor Vehicle Accidents and On the Job Injuries, no charity care discount shall be offered until a denial from the insurance is received. If at a later date it is determined that litigation is in process or a settlement may be made, then the offer of charity shall be withdrawn until a letter from the patient's attorney is received stating there is no settlement.

F. It is the responsibility of the patient to let the hospital know which accounts shall be included in the consideration of Financial Assistance. It is likewise the responsibility of the patient to inform the hospital when additional accounts for the patient or approved family members shall be included in the Financial Assistance determination. Patients receiving statements for any amount owed shall contact the hospital immediately to ensure that these amounts are included. The Medical Center shall not assume this responsibility.

*This document is confidential and proprietary to Sky Lakes Medical Center. Unauthorized use or copying without written consent is strictly prohibited. Printed copies are for reference only. Please refer to the Intranet for the most current version.*

G. For each application the patient shall receive a letter of approval, denial or a letter explaining the additional information needed to process the application within 20 days.

H. Each application shall be considered effective for three calendar months starting from the date of approval but assistance can also be applied retroactively to any account in good standing, if assistance or a self-pay discount has not already been applied, or if the amount of assistance is now greater than an amount previously applied (only the difference between the two shall be considered).

I. We shall not refund any self-pay payments received during the application process or after Financial Assistance is approved.

J. Any patient who has qualified for Financial Assistance shall not be held financially liable for an annual patient balance in excess of 20% of the patient's total family income. Additionally, any individual deemed eligible for Financial Assistance under the FAP shall not be charged more than the amounts generally billed to individuals who have insurance for emergency or other medically necessary care.

K. To calculate the Amounts Generally Billed (AGB) the Medical Center is using the "look-back method." This method bases AGB on fully processed inpatient, outpatient and clinic claims with a primary payor of Medicare fee-for-service, Military or a commercial payor (including Medicare Advantage plans) for each fiscal year. The sum of total payments made by those payers is then divided by the sum of total hospital charges for those claims to identify the "AGB percentage." The Medical Center has set the minimum percentage write-off for FAP eligible individuals at 70% to assure that we continue to meet or exceed the AGB percentage discounts provided to other insured individuals seeking emergent or other medically necessary care. This minimum AGB percentage is reviewed each fiscal year to assure continued compliance.

**Presumptive Financial Assistance Eligibility**

Presumptive charity may be considered when all other avenues of payment have been exhausted. In the event there is no evidence to support a patient's eligibility for charity care, the Medical Center can use outside agencies in determining estimate income amounts for the basis of determining charity care eligibility. Presumptive eligibility may be determined on the basis of the individual life circumstances that may include, but may not be limited to:

A. State-funded prescription programs
B. Medicaid eligibility
C. Homeless or received care from a homeless clinic
D. Eligibility for other state or local assistance programs that are unfunded (e.g., Medicaid spend-down)
E. Low income/subsidized housing is provided as a valid address
F. Patient is deceased with no known estate

Once it is determined that a patient account qualifies for presumptive charity, an assistance application shall be filled out by the representative. The account(s) shall be noted patient qualifies for presumptive charity. This may also include accounts that are in the collection agency as long as legal action has not been taken.

**Collection Practices**

*This document is confidential and proprietary to Sky Lakes Medical Center. Unauthorized use or copying without written consent is strictly prohibited. Printed copies are for reference only. Please refer to the Intranet for the most current version.*

Sky Lakes - CP00021

A. Statements are mailed once a patient's self-pay balance is determined, followed by three additional statements for a total of four billing statements. All statements shall include clear language regarding no-interest payment plans and Financial Assistance options.

B. The Medical Center shall make every effort to determine whether or not a patient is FAP eligible during the 120 days following a patient's date of care. During this 120 day period, known as the "notification period", the medical center shall make concerted attempts to engage the patient in determining FAP eligibility. During this determination period, a patient may formally apply for Financial Assistance with the assistance of Change Healthcare or on their own accord through the Financial Counseling office. Once an application is submitted, an additional 120 day extension may be applied to a patient's accounts while a determination is made.

C. Collection phone calls are made throughout the billing process, with no less than one mandatory phone call made to the patient. The Medical Center shall make certain efforts to provide uninsured patients with information about our Financial Assistance policy and no-interest payment plans before the Medical Center or our collection vendors take certain actions to collect payment. These efforts shall include notifying the patient about the FAP process, providing the patient with information relevant to completing an incomplete FAP application, making a determination as to whether or not the patient is FAP eligible and documenting said determination.

D. No extraordinary collection actions shall be pursued against any patient without first making reasonable efforts to determine whether that patient is eligible for Financial Assistance. Reasonable efforts shall include, but not be limited to, validating that the patient owes the unpaid bills and that all sources of third-party payments have been identified and billed by the Medical Center. Reasonable efforts also include a prohibition on extraordinary collection actions (ECAs) pursued against an uninsured patient (or one likely to be underinsured) until the patient has been made aware of the care site's Financial Assistance policy and has had the opportunity to apply for it or has availed themselves of a reasonable payment plan. Examples of ECAs are:

1. Placing a lien on an individual's property
2. Foreclosing on an individual's property
3. Attaching or seizing an individual's bank account or any other personal property
4. Commencing a civil action against an individual
5. Causing an individual's arrest
6. Garnishing an individual's wages
7. Reporting adverse information about an individual to a credit bureau
8. Selling an individual's debt to another party

E. The Medical Center may pursue collection actions against patients found ineligible for Financial Assistance, patients who received discounted care or medical hardship discounts but are no longer cooperating in good faith to pay the remaining balance, patients who are non-compliant with attempts to contact them, or patients who have established payment plans but are not in accordance with the payment plan.

F. Fraudulent statements or information given by the patient for the purpose of obtaining financial assistance may be forwarded to the Oregon Department of Justice for Prosecution. Patients who falsify the program application shall no longer be eligible for the program and

*This document is confidential and proprietary to Sky Lakes Medical Center. Unauthorized use or copying without written consent is strictly prohibited. Printed copies are for reference only. Please refer to the Intranet for the most current version.*

Sky Lakes - CP00022

shall be held responsible for all charges incurred while enrolled in the program retroactively to the first day that charges were incurred under the program.

*This document is confidential and proprietary to Sky Lakes Medical Center. Unauthorized use or copying without written consent is strictly prohibited. Printed copies are for reference only. Please refer to the Intranet for the most current version.*

Sky Lakes - CP00023

## List of Providers not covered by the Financial Assistance Policy
## As of October 1, 2019

**All Medical Center employed physicians and non-elective, medically necessary hospital services are covered under the Financial Assistance application, as outlined in the policy.**

**Per Reg. Sec. 1.504(r)-4(b)(1)(iii)(F) and Notice 2015-46, this list specifies which providers of emergency and medically necessary care delivered in the hospital facility are not covered by the Financial Assistance Policy (FAP).**

| AMBULANCE/TRANSPORT - ALL | | OPTOMETRY/OPTHAMOLOGY - ALL | |
|---|---|---|---|
| **ANESTHESIOLOGY - ALL** | | JONATHAN D FAY | MD |
| CHARLES T GONSOWSKI | MD | MARK T FAY | MD |
| | | SCOTT STEVENS | MD |
| ERIC B SWETLAND | MD | TERESA R GRAHAM | MD |
| JOHN F SWETLAND | MD | | |
| | | **ORTHOPEDICS** | |
| PETER LUSICH | MD | EDWARD L VAN TASSEL | DO |
| | | FRED NARAGHI | MD |
| REBECCA MORTON | MD | GILLIAN BAYLEY | MD |
| STEFAN JODKO | MD | KARL R KNUDSEN | MD |
| SUSAN BARNES | MD | KEVIN T HEATON | DO |
| VINCENT D HERR | MD | LUKE HOSACK | MD |
| | | | |
| **CARDIOLOGY - ALL** | | **PATHOLOGY - ALL** | |
| DALE S MCDOWELL JR | MD | MIGUEL A MONTES | MD |
| GEORGE KUBAC | MD | | |
| JOANN B NARKIEWICZ-JODKO | MD | **PEDIATRICS** | |
| RASTISLAV KUCINSKY | MD | TASIA HULST | MD |
| | | NICOLA J CHERRY | MD |
| | | NICOLS MOTTOLA | MD |
| **DENTAL – ALL** | | TRACY W GRAHAM | MD |
| REX GIBSON | DDS | | |
| | | **PLASTIC SURGERY - ALL** | |
| **DURABLE MEDICAL EQUIPMENT** | | NICK I VIAL | MD |
| PACIFIC MEDICAL INC | | ROBERT T QUINN | MD |
| | | | |
| **GENERAL SURGERY** | | **PODIATRY - ALL** | |
| RAUL A MIRANDE | MD | JEFFREY T MERRILL | DPM |
| | | MICHAEL P MCCULLOUGH | DPM |
| **INTERNAL/GENERAL MEDICINE** | | | |
| ASHLEY BRYSON | MD | **PULMONOLOGY - ALL** | |
| CHARLES K COFAS | MD | DAVID PANOSSIAN | MD |
| EDWARD R TROBAUGH | MD | JAMIE CONKLIN | MD |
| FLOR MOUNTS | MD | | |
| JAMIE PALMER | MD | **RADIOLOGY** | |
| JAN HALLOCK | DO | | |
| SARAH WLLIAMS | MD | vRAD RADIOLOGY SERVICES | |
| | | JILL FAY | MD |
| **OBSTETRICS - OB/GYN** | | | |
| ARIELLE A METZ | MD | **TELEMEDICINE** | |
| CHERI MONTEITH | WHCNP | CHARLES LIVESY | MD |
| CORY T JOHNSON | MD | | |
| LUANA HOSSAIN | MD | | |

*This document is confidential and proprietary to Sky Lakes Medical Center. Unauthorized use or copying without written consent is strictly prohibited. Printed copies are for reference only. Please refer to the Intranet for the most current version.*

MARK PARRA                         MD
MARTIN L MEINIG                    MD
TANYA RUBENSTEIN                   MD

*This document is confidential and proprietary to Sky Lakes Medical Center. Unauthorized use or copying without written consent is strictly prohibited. Printed copies are for reference only. Please refer to the Intranet for the most current version.*

Sky Lakes - CP00025

IN THE CIRCUIT COURT OF THE STATE OF OREGON
FOR KLAMATH COUNTY

### Small Claims Department

Carter-Jones Collection Service, Inc. _____ )
_____ )
_____ )    **Case No** _____
                                        Plaintiff     )
                                                      )
(Inmate ID #, if applicable, _____)       )
                    v.                                )    **SMALL CLAIM AND**
Nathaniel James Boren _____     )    **NOTICE OF SMALL CLAIM**
_____ )    SUBJECT TO UTCR 5.180(3)
_____ )    Filing fee at ORS 46.570
                                        Defendant     )    **Interpreter needed:** ☐ **Spanish** ☐ **Russian**
            ☐Defendant is a public body               )    ☐ other: _____

**PLAINTIFF** (☐Additional on attached page)      **DEFENDANT** (☐Additional on attached page)

Carter-Jones Collection Service, Inc.            Nathaniel James Boren
Name                                             Name (enter Registered Agent, if necessary, on next page)

1143 Pine Street                                 1247 Hilton Dr
Street                                           Street (do not use a P.O. Box)

Klamath Falls, Or 97601                          Klamath Falls, Or 97603
City / State / Zip                               City / State / Zip

(541)882-3424
Phone                         County             Phone                         County

I, Plaintiff, claim that on or about *(date)* 11/16/2022 _____, the above-named defendants owed me

the sum of $ 620.18 _____ because See Exhibit A

_____

" See The Oregon Judicial Department's Website About

Debt-Collection Cases"

This Communication Is From A Debt Collector. This Is An Attempt To

Collect A Debt And Any Information Obtained Will Be Used For That

Purpose.

_____, and this amount is still due.

|                                              | Claim  | $ 620.18 |
|                                              | +Fees  | $ 57.00  |
I have paid (or will pay):                     | +Costs | $ 50.00  |

filing fees of $57.00

and service costs of $50.00                     Total   $ 727.18

**Plus Interim Interest at 9 % Per Annum**

# DECLARATION OF BONA FIDE EFFORT

I, Plaintiff, have made a bona fide effort to collect this claim from the defendants before filing this claim with the court clerk.

**I hereby declare that the above statements are true to the best of my knowledge and belief, and that I understand they are made for use in court and I am subject to penalty for perjury.**

11/16/2022
Date

Plaintiff Signature

ccueto@carter-jones.com
Email address*

Representative for Carter-Jones Collection Service, Inc.
Plaintiff Name (print)

*Some courts communicate with parties by email.  By providing my email address I consent to receive notifications from the court by email instead of or in addition to other methods.  I understand that if my email changes or if I choose to withdraw consent, I must notify the court in writing.

**DEFENDANT'S REGISTERED AGENT:**

Name

Street (do not use a P.O. Box)

City / State / Zip

Phone                                    County

Form 15.010.1a – SMALL CLAIM AND NOTICE OF SMALL CLAIM – UTCR 15.010(1)(a)
(Revised 8-1-14)

Case No. _____

NATHANIEL JAMES BOREN

Exhibit "A" Small Claim

NOVEMBER 16, 2022

| Assignor | Principle | Interest Rate | Interest Amount | Interest Start Date | Date of Service | Last Payment |
|---|---|---|---|---|---|---|
| SKY LAKES MEDICAL CENTER EP | 578.52 | 9.00% | 41.66 | 03/01/22 | 06/08/20 | 07/25/22 |

Total $  620.18

Interest is charged under ORS 82.010, a true interest rate of 9% per annum. If a written and signed document specifies any other charges, that charge will prevail.

This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.

# NOTICE TO DEFENDANT:

## READ THESE PAPERS CAREFULLY!

Within **14 DAYS\*** after receiving this notice you **MUST** do **ONE** of the following things in writing:

- Pay the claim plus filing fees and service expenses paid by plaintiff (send payment directly to the plaintiff, not to the court) **OR**
- Demand a hearing and pay the fee required (below) **OR**
- Demand a jury trial and pay the fee required (below). This option is available **only** if amount claimed is more than $750.

If you fail to do one of the above within <u>14 DAYS\*</u> after you get this notice, the plaintiff may ask the court to enter a judgment against you.  The judgment will be for the amount of the claim, plus filing fees and service costs paid by the plaintiff, plus a prevailing party fee.  If you are not able to respond in time because you are in active military service of the United States, talk to a legal advisor about the Servicemembers Civil Relief Act.

**COURT NAME / ADDRESS / PHONE #**
**>Klamath County Courthouse**
**>316 Main Street**
**>Klamath Falls, Oregon 97601**
**>(541) 883-5503,http://courts.oregon.gove/Klamath**
**Defendant's Filing Fees** *(must be filled in by the PLAINTIFF)***:**

| | |
|---|---|
| (1) To demand a hearing if the amount claimed is $2,500 or less | $ <u>57.00</u> |
| (2) To demand a hearing if the amount claimed is more than $2,500 | $ <u>102.00</u> |
| (3) To demand a jury trial (only if amount claimed is over $750) | $ <u>170.00</u> |

If you have questions about filing procedures, go to *www.courts.oregon.gov* for information and instructions, or you may contact the court clerk.  The clerk *cannot* give you legal advice about the claim.

---

**\*NOTE:**  If the plaintiff is an <u>inmate</u> (ORS 30.642) AND the defendant is a <u>government agency or other public body</u> (ORS 30.260), the defendant must respond within **30 days** after receiving this Notice.

Form 15.010.1a – SMALL CLAIM AND NOTICE OF SMALL CLAIM – UTCR 15.010(1)(a)
(Revised 8-1-14)                                                                    Case No. _____

## IN THE CIRCUIT COURT OF THE STATE OF OREGON
## FOR <u>KLAMATH</u> COUNTY

### Small Claims Department

Carter Jones Collection Service, Inc.
_____   )
_____   )
                                   Plaintiff   )   **Case No _____**
                                            )
                                            )
        (Inmate ID #, if applicable, _____)   )
                        v.                    )   **DEFENDANT'S RESPONSE**
Nathaniel James Boren                         )
_____   )
_____   )
                                  Defendant   )   Interpreter needed: ☐ Spanish ☐ Russian
        ☐ Defendant is a public body          )   ☐ other: _____

EACH Defendant must file a separate response (spouses and Registered Domestic Partners may file a joint response)

---

☐ **PAYMENT OF CLAIM:**
    Proof of payment (including fees and costs) to Plaintiff is attached (or proof that the Requested property was returned to Plaintiff).

Total Amount Paid:$ _____ _(or) Describe property and method of return:

_____
_____

---

☐ DENIAL OF CLAIM
    I deny the plaintiff's claim and demand a ☐ Hearing (or) ☐ Jury trial.*
*The claim must be for more than $750 (without fees and costs) to request a jury trial.

    ☐ COUNTERCLAIM:
    I make the following counterclaim* against the plaintiff for $
* Counterclaims must arise out of the same transaction or event as the plaintiff's claim.

I, Defendant, claim that on or about (date)_____, the above-named
plaintiff owed me the amount claimed because _____
_____
                                        , and this amount is still due.

If the amount is the value of property that you believe should be given to you, describe
the property: _____

_____
Date                                              Signature;_____

_____
Email address *                                    Name (Print)

_____
Street                      City/State/Zip                      Phone

*some courts communicate with parties by email. By providing my email address I consent to receive notifications from the court by email instead of or in addition to other methods. I understand that if my email changes of if I choose to withdraw consent. I must notify the court in writing.

Form 15010. e-DEFENDANT'S RESPONSE-UTCR 15.010 (I)(e)

(Revised 8-1-14)                                          Case No:_____

IN THE CIRCUIT COURT OF THE STATE OF OREGON
FOR KLAMATH COUNTY
**Small Claims Department**

Carter-Jones Collection Service, Inc.
_____  )
_____  )      **Case No. 22SC29959**
                                    Plaintiff  )
            v.                                )      **SMALL CLAIMS JUDGMENT**
Nathaniel James Boren                        )      ☒ **AND MONEY AWARD**
_____  )      ☐ General ☐ Limited ☐ Supplemental
_____  )
_____  )      **Submitted by:  Agent of the Plaintiff**
                                    Defendant  )
                                              )            ☐**Plaintiff** ☐ **Defendant**

The court grants judgment for Carter-Jones Collection Service, Inc. (judgment creditor") and
**Against Nathaniel James Boren (**"judgment debtor").
> In addition to or instead of a money award, the following provisions are ordered: _____

## MONEY AWARD

1.   Judgment Creditor:  Carter-Jones Collection Service, Inc.
                         1143 Pine Street, Klamath Falls, Or 97601, 541-882-3424
                                        *(name, address)*
     a.   Judgment Creditor's lawyer _____ N/A _____
                                        *(name, address, phone number)*
        ☐Additional information attached, titled "Additional Judgment Creditors"

2.   Judgment Debtors  ☐Additional information attached, titled "Additional Judgment Debtors"

| Name | Nathaniel James Boren | |
|---|---|---|
| Address | 1247 Hilton Dr Klamath Falls, Or 97603 | |
| Year of Birth | 1999 | |
| SSN (last 4 digits) or full Tax ID | REDACTED | REDACTED |
| Driver License # (last 4 digits) & State | REDACTED | REDACTED |
| Lawyer Name | UNKNOWN | UNKNOWN |

3.   No person or public body other than Judgment Creditor and Judgment Creditor's lawyer is
     entitled to any part of this money award EXCEPT: _____

4.   The total amount awarded by this judgment is 794.18, which includes:

| | |
|---|---|
| 1.  Money Award $ 578.52 | 2.  Prejudgment Interest $ 41.66 |
| 3.  Costs & Service Expenses  $ 57.00 | 4.  Attorney Fees  $ |
| 5.  Prevailing Party Fee (listed at ORS 20.190) $ 117.00 | |

Plus Post judgment interest on the amount in sections 1 and 2 at the rate set by ORS 82.010(2) (or
9% by agreement of the parties), and in sections 3, 4, and 5 at the rate set by ORS 82.010(2)

12/9/2022 2:06:57 PM
_____

_____
**Circuit Court Clerk Tava Sloss**

Form 15.010.1d – SMALL CLAIMS JUDGMENT AND MONEY AWARD – UTCR 15.010(1)(d)
(Revised 8-1-12)                                          Case No. _____

IN THE CIRCUIT COURT OF THE STATE OF OREGON
FOR THE COUNTY OF KLAMATH

CARTER-JONES COLLECTION SERVICE, INC

PLAINTIFF

VS                                    NO. 22SC29959

SATISFACTION OF MONEY AWARD

NATHANIEL JAMES BOREN

DEFENDANT (s)

Comes now the Plaintiff and acknowledges satisfaction of Money

Award in the above entitled case in full.

Dated this 16TH day of MAY, 2023

CARTER-JONES COLLECTION SERVICE, INC.

BY _____

STATE OF OREGON        )
                       ) SS
COUNTY OF KLAMATH       )

Subscribed and sworn to before me this 16TH day of

MAY, 2023.

OFFICIAL STAMP
ALISA MARILYN GAILEY
NOTARY PUBLIC - OREGON
COMMISSION NO. 1034446
MY COMMISSION EXPIRES MARCH 14, 2027

_____
Notary Public for Oregon
My commission expires 3-14-27